Filed 8/29/13  In re T.W. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re T.W. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E057845 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J234685 & J234686) |
| v. | OPINION |
| J.F. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Affirmed.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant, mother.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant, father.

1

Jean-Rene Basle, County Counsel, and Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

The children, T.W. and M.W., were removed from the parents' custody when their six-year old half sister, C.V., reported being sexually molested by father and her cousin, in addition to allegations of parental substance abuse and domestic violence. The parents received services for 23 months. Father completed his services plan but did not address the sexual abuse allegations. Mother did not complete her service plan and failed to reveal her mental health issues until shortly before services were terminated, never addressing those mental health issues. Prior to the hearing pursuant to Welfare and Institutions Code[1] section 366.26, at which parental rights were terminated, father filed a petition to modify the prior order terminating services (§ 388), which was denied without a hearing. Both parents appeal.

On appeal, the parents assert the trial court erred in determining that the parent-child beneficial relationship exception had not been established. Father also argues separately that the court erred in denying his section 388 petition. Mother separately argues for reversal due to the existence of a sibling bond, and because the court failed to consider the wishes of the children. We affirm.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

## BACKGROUND

This dependency originated when C.V., mother's six-year-old child from a prior relationship, was taken to the hospital by her maternal grandmother on August 24, 2010. The maternal grandmother informed the hospital staff that the injury was sustained when she fell down some stairs a day or so earlier. However, the grandmother was concerned because the child's mother used drugs and father, mother's live-in boyfriend and father of mother's two younger children, was abusive. The parents had a prior history with the San Bernardino Children and Family Services (CFS) agency for various unfounded or inconclusive allegations.

The medical examination revealed the vaginal laceration and hymenal oddities, which were not specific for sexual abuse, but C.V.'s history raised concerns about neglect and sexual abuse. C.V. was interviewed following the medical examination and informed the social worker that both her six-year-old cousin T., and her "daddy" (father), had touched her "down there" at the paternal grandmother's residence in Newberry Springs. A detention warrant was obtained from the juvenile court resulting in the temporary removal of C.V.,[2] along with her two younger half-siblings, M.W. and T.W., Jr.

Juvenile dependency petitions were filed with respect to M.W., age four, and T.W., Jr., age two, alleging that they were at risk of abuse or neglect due to the parents'

---

[2] C.V. lives with her biological father and is not a part of this appeal.

3

failure to protect due to mother's substance abuse and ongoing acts of domestic violence (§ 300, subd. (b)), sexual abuse of C.V. (§ 300, subd. (d)), and the abuse of a sibling. (§ 300, subd. (j).)

At the jurisdictional hearing, the juvenile court found that C.V. had been touched by father but that he had not caused the laceration in her vagina. The court then made true findings under section 300, subdivisions (b), (d), and (j), as to M.W. and T.W., Jr. The children were declared dependents, and were removed from their parents' custody; the court approved a reunification plan as to M.W. and T.W., Jr., ordering both parents to participate in it. Father timely appealed the jurisdictional and dispositional findings and orders. On November 15, 2011, we affirmed the judgment. (*In re T.W., et al.; San Bernardino County Children and Family Services v. T.W.* (Nov. 15, 2011, E052867) [nonpub. opn.].)

By the time of the six-month review hearing, the parents had complied with some but not all of their service plans. CFS recommended continuation of reunification services based on father's progress reports, although the social worker noted he had never taken responsibility for the sexual abuse of his stepdaughter. Based on a mediated agreement and the social worker's recommendations, the court continued services and gave CFS authority to liberalize visits.

During the next review period, the parents failed to make progress to rectify the problems that brought the family to the attention of CFS and the court, namely, the areas of substance abuse and sexual abuse. Mother continued to have a substance abuse

4

problem and failed to complete any program. Although father complied with some services and was engaged in therapy, he continued to deny sexually abusing C.V. Visits went well and both children were described as bonded to the parents. Nevertheless, CFS recommended that services be terminated and that a hearing pursuant to section 366.26 be scheduled.

The 12-month review hearing was continued in order to obtain a report or letter from father's therapist regarding risk factors from the prior sexual abuse reports. Father's therapist reported that father had made excellent progress in all of the treatment areas except the issue of sexual abuse of C.V. However, father's therapist concluded father was a low risk for sexual abuse of his children, but would be a high risk if he were to resume substance abuse. The social worker concluded that the parents, while willing to complete parts of the service plan, had failed to address the problems that brought the family to the attention of the court, which were substance abuse and sexual abuse.

The juvenile court continued the 12-month review hearing a second time to obtain additional opinions about father's history, progress, and risk factors. The new hearing date was also scheduled as an 18-month review hearing. (§ 366.22.) A psychological evaluation pursuant to Penal Code section 288.1 was prepared, using the actuarial assessment instruments to determine his potential for reoffending. It concluded that father was not capable of safely and competently parenting children and presented an unacceptable risk of reoffense. The father was given an opportunity to obtain another report.

On May 25, 2012, the court conducted the contested 18-month review hearing. In his testimony, father denied molesting C.V. and indicated that what he had learned about sexual abuse from his therapy sessions related to what was considered sexual abuse, such as kissing the mother or having sex in front of the children. However, father demonstrated he had successfully completed the other aspects of his reunification plan. As to mother, the only remaining protection issue was her unwillingness to acknowledge the sexual abuse findings made by the court.

At the conclusion of the hearing, the court terminated reunification services to the parents, but determined that it was not in the best interest of the minors to consider termination of parental rights. Over the objections of county counsel and the minors' attorney, the court ordered a Planned Permanent Living Arrangement (PPLA) with the children in their current placement, with the goal of returning them to mother's custody. Reunification services to father were terminated, but mother was to receive services under the children's plan. On June 20, 2012, father timely appealed. [3]

On July 23, 2012, at county counsel's request, the juvenile court reconsidered the orders made on May 25, 2012, and vacated them, concluding that it lacked authority to order a permanent plan of PPLA at the section 366.22 hearing. Prior to the hearing, the social worker filed an interim review report indicating mother had never complied with the therapy portion of her reunification plan, attending only one session in June 2012,

_____

[3] On August 29, 2012, we issued an order on our own motion that the writ petition in case No. E056728 would be considered with the appeal in case No. E056529.

although she had completed an outpatient substance abuse program. Additionally, the social worker learned for the first time from mother's psychiatrist that she suffered from mental illness in addition to bipolar disorder, namely schizoaffective disorder, which impaired her parenting ability and put the children at risk for further abuse.

Mother had not made CFS aware of her mental health issues. The medication prescribed for mother's mental illness apparently was ineffective in eliminating the auditory hallucinations she experienced. Additionally, mother's behavior at visits showed poor judgment and lack of empathy for the oldest child, C.V., the victim of the molestation, in contacting father during the visits and showing the children pictures of another perpetrator.

The court granted county counsel's request to reconsider the prior order and, after vacating the previous order, it entered a new order terminating reunification services for both parents, and setting a hearing for the selection and implementation of a permanent plan pursuant to section 366.26. Both parents filed notices of intent to file extraordinary writ petitions from the subsequently modified order terminating services and setting the section 366.26 hearing. As a result of the modification of the prior order, the appeal in case No. E056529 was dismissed as moot. We denied the petitions on November 7, 2012. (*T.W. et al. v. Superior Court* (Nov. 7, 2012, E056728) [nonpub. opn.].)

In the meantime, on September 19, 2012, the social worker informed the court, by way of packet, that the children had been matched with adoptive parents. CFS began transitioning the children into the new placement. On September 20, 2012, CFS

7

requested that parental visits with the children be reduced from two, two-hour visits per week, to one, two-hour visit per month, in order to facilitate bonding with the prospective adoptive family. The parents objected to this request. On October 2, 2012, the juvenile court ordered that visits be reduced to one, two-hour visit per week.

On December 3, 2012, father filed a petition to modify the prior order terminating services on the ground that he had completed his reunification plan requirements "a long time ago," and the children have a strong bond with him. The court summarily denied the petition without a hearing on the ground it did not allege any new evidence or change of circumstances.

The contested section 366.26 hearing was conducted on December 17, 2012. After considering all the evidence presented, the court found by clear and convincing evidence that the children were adoptable and that the beneficial parent-child relationship exception did not apply. The court terminated parental rights to both children. Both parents appealed.

## DISCUSSION

### 1. *Summary Denial of Father's Section 388 Petition Was Proper.*

Father claims that prima facie evidence supported his section 388 petition and that, consequently, the court erred in summarily denying it. We disagree.

A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best

8

interests of the child. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316-317.) The parent bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529.)

Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228.) The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion. (*In re Stephanie M., supra,* 7 Cal.4th at p. 318; *In re S.J.* (2008) 167 Cal.App.4th 953, 959.)

Section 388 petitions are liberally construed in favor of granting a hearing to consider the request. (*In re E.S.* (2011) 196 Cal.App.4th 1329, 1340; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413-1414.) However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition. (*Ibid.*, citing *In re Edward H.* (1996) 43 Cal.App.4th 584, 594.) In such a case, the petition may be denied without an evidentiary hearing. (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.)

In his reply brief, father argues that his refusal to admit sexual abuse, standing alone, is not sufficient to show his circumstances had not changed. His refusal to *admit* the allegations was not at issue. What was at issue was his failure to even allege, much less make a prima facie showing, that his circumstances were changed from the time that services were terminated. Here, the trial court determined that the petition failed to allege new evidence or a change of circumstances in summarily denying it. Our review supports this determination. Father's own petition alleges that he had fully completed his court ordered services a long time prior to the filing of the section 388 petition. Father's position at the time he filed the petition was the same as his position at the time his services were terminated, so no change of circumstance was alleged. Having failed to allege any new circumstances, it cannot be said he made a prima facie showing on that ground.

Nor did father present new evidence which would cast doubt on the validity of the finding of sexual abuse, although he repeatedly refers to his denials of abuse. A parent's denial of abuse, after a juvenile court has made a factual finding of sexual abuse, does not constitute new evidence which would justify a change of the prior order. Father did present evidence at the combined 12- and 18-month review hearings to support his assertion he did not pose a serious risk of reoffense, but he did not present evidence which would undermine the jurisdictional finding (see *Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1741-1742, where a psychological evaluation exonerated the father of molestation and concluded he lacked any tendency toward molestation) at

the section 388 stage, this does not constitute new evidence which undermines the factual finding.

Father relies on the psychologists' risk assessments—prepared in connection with the combined 12- and 18-month review hearing—as evidence undermining the true finding of sexual abuse. However, nothing in those reports raises a question as to the validity of the true finding that T.W. had sexually abused his step-daughter. In this significant respect, this case differs from *Blanca P. v. Superior Court, supra,* 45 Cal.App.4th at page 1753, on which father relies. We realize that true findings for jurisdiction are made by a mere preponderance of evidence. But father's personal denial is insufficient to make that true finding go away. This failure meant that the sexual abuse allegation, which was a primary cause of the loss of custody, had never been addressed by father in his reunification plan.

Because there was no prima facie showing of changed circumstances or new evidence to support a modification, the summary denial of father's petition was proper.

### 2. *The Parents Failed to Meet Their Burden of Proving that Termination of Parental Rights Would Be Detrimental Due to a Beneficial Parent-Child Relationship*.

Both parents argue that the juvenile court erred in terminating their parental rights in light of a beneficial parent child relationship. We disagree.

Section 366.26, subdivision (c)(1), provides that if the court determines, based on the [adoption] assessment and any other relevant evidence, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for

11

adoption, unless one of several statutory exceptions applies. Once the court determines a child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental under one of the exceptions listed in section 366.26, subdivision (c)(1)(B). (*In re Zachary G., supra,* 77 Cal.App.4th at p. 809, citing *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343-1345.) We must affirm a trial court's rejection of the exceptions if the ruling is supported by substantial evidence. (*Zachary G.,* at p. 809.)

One such exception applies when the court finds a compelling reason for determining that termination would be detrimental to the child because the parents have maintained regular visitation and contact with the child, and the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).) This exception applies only when the relationship with a natural parent promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) The determination of whether a beneficial parent-child relationship exists is reviewed for substantial evidence. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.)

The juvenile court found that the parents had met the first prong by maintaining regular contact and visitation. But it concluded that the parents had not demonstrated that maintaining the parent-child relationship was such a benefit to the children as would outweigh the benefit of adoption. Thus, we will focus our inquiry on the second prong of the exception, whether the children would benefit from continuing the relationship.

12

Evolving case law began with the premise that a parent's "frequent and loving contact" with the child is not enough to sustain a finding that the exception would apply, when the parents "had not occupied a parental role in relation to them at any time during their lives." (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.)  However, recognizing the practical difficulty of establishing a parental role when a child has been removed from the home, current decisions hold that to determine if the parents have occupied a parental role, it is not necessary for a parent to show day-to-day contact and interaction.  (*In  re S.B.* (2008) 164 Cal.App.4th 289, 299; *In re Casey D.* (1999) 70 Cal.App.4th 38, 51.)  As the court observed in *In re S.B., supra,* if that were the standard, the rule would swallow the exception.  (*Ibid.*)  Therefore, we do not look for proof of day-to-day contact or interaction.

Instead, the court determines whether the parent has maintained a parental relationship, or an emotionally significant relationship, with the child, through consistent contact and visitation.  (*In re S.B., supra,* 164 Cal.App.4th at pp. 298, 300-301.)  To overcome the preference for adoption and avoid termination of the natural parent's rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed.  (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466 [italics in original], citing *In re Lorenzo C., supra,* 54 Cal.App.4th at p. 1342.)

The factors to be considered when looking for whether a relationship is important and beneficial are:  (1) the age of the child, (2) the portion of the child's life spent in the

13

parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs. (*In re Angel B., supra*, 97 Cal.App.4th at p. 467; see also *In re Bailey J., supra,* 189 Cal.App.4th at p. 1315.)

The social worker's reports demonstrate that the children had a bond with their parents, and enjoyed visitation with their parents. But this does not compel a conclusion that the parent-child relationship is so *significant* that severance would be detrimental. The children were in foster care for a significant portion of their young lives (for one-third of M.W.'s life, and one-half of T.W.'s life), and there is no evidence they looked to their parents for comfort or for their basic needs.

On the other hand, the social worker's reports reveal the children looked to their adoptive parents for comfort, affection, guidance and direction, that the children called the adoptive parents mommy and daddy, and referred to the adoptive family's home as their own home. The parents failed to establish that maintaining the parent-child relationship would benefit the children such that severance of the relationship would be detrimental.

There was other evidence supporting the conclusion that adoption would not be detrimental. First, mother's unstable mental health condition, never addressed during the reunification phase, supports the judge's conclusion that maintaining a relationship with her would not outweigh the benefit the children would gain from the permanence and stability of the adoptive home. Because of her mental illness, she could not even recall missing several visits, insisting that she had been there. She acknowledged in her

14

testimony at the section 366.26 hearing that her mental health condition causes her to forget dates, times and events. Because of this unresolved problem, the benefit of maintaining a relationship with mother would not outweigh the permanence and security that adoption would provide.

Second, father's unresolved sexual abuse issue compelled a conclusion that the benefit of maintaining a relationship with him did not outweigh the benefit the children would gain from the permanence and stability of the adoptive home. The juvenile court properly found that the beneficial parent-child relationship exception did not apply.

### 3. *Mother Failed to Preserve Any Issue Challenging the Court's Alleged Failure to Consider the Wishes of the Children or the Sibling Relationship Exception.*

Mother argues, for the first time on appeal, that the adoption assessment failed to indicate the children's views on adoption and that the juvenile court's finding of adoptability failed to consider the wishes of the children.[4] In a separate argument, mother claims the children were not adoptable because of the sibling bond exception. Mother has forfeited these claims.

#### a. *Forfeiture*

Mother's argument that adoptability assessment fails to include information about the children's understanding of and views about being adopted, was not raised in the trial court, so it is forfeited. (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1317; *In re Brian P.*

---

[4] Father joined these arguments.

15

(2002) 99 Cal.App.4th 616, 623.) Further, neither parent argued at the hearing that the court failed to consider the wishes of the children, or requested that the children be required to testify at the hearing. (See *In re Amanda D.* (1997) 55 Cal.App.4th 813, 819-820.) Thus, any challenge to the court's finding that it had considered the best interests of the children is limited to a substantial evidence review.

In her reply brief, mother asserts that the failure to obtain a statement from the minors as to their views of adoption resulted in an insufficient body of evidence to support the court's judgment as to the appropriate permanent plan. We disagree. The court's selection of adoption as the appropriate permanent plan is based on clear and convincing evidence that the children are adoptable. That finding in this case is unaffected by any failure to ask the children how they felt about adoption. Nevertheless, because the issues fail on the merits, we address them briefly.

      a.     *The Children's Wishes*

Section 366.26, subdivision (h)(1), provides that "[a]t all proceedings under this section, the court shall consider the wishes of the child and shall act in the best interests of the child." The section does not require the presence of the child in court unless the child, or the child's counsel, so requests and the court orders. (§ 366.26, subd. (h)(2).)

Evidence of the children's wishes need not be in the form of direct testimony in court or chambers; it may be found in court reports prepared for the hearing. (*In re Amanda D., supra,* 55 Cal.App.4th at p. 820; see also *In re Christopher L.* (2006) 143 Cal.App.4th 1326, 1334.) The court is not required to specifically ask the child how he

16

or she feels about ending the parental relationship.  (*Amanda D.,* at p. 820, citing *In re Leo M.* (1993) 19 Cal.App.4th 1583, 1593.)  The court must only consider the child's wishes to the extent those wishes are ascertainable, since a child may not be able to understand the concept of adoption.  (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 201, citing *In re Juan H.* (1992) 11 Cal.App.4th 169, 173.)

Here, the children were only six and four years old at the time of the hearing, and the social worker reported that they were too young to understand the concept of adoption.  This conclusion was unchallenged at the hearing.  The report, prepared a month before the hearing, goes on to state that the children viewed the prospective adoptive parents as their parental figures and the adoptive home as their home.  This was sufficient to communicate the children's wishes where both children expressed contentment in the adoptive home and a parental relationship with the adoptive parents.

This evidence was not undermined by mother's testimony that the children expressed a desire to come home with her, because her inability to recall events accurately rendered her testimony unreliable.  The only recent, reliable information about the children's wishes was found in the social worker's report.  Substantial evidence supports the court's conclusion that the wishes of the children had been considered in finding that they were adoptable.

> b.    *Sibling Exception*

Mother's final argument is that the judgment terminating her parental rights as to both children must be reversed because of the close bond between the children, and refers

17

to the sibling bond exception to a finding of adoptability.  She does not assert that their adoption would interfere with their relationship to C.V., their older half-sister.

The parent has the burden of establishing an exception to termination of parental rights.  (*In re Daisy D.* (2006) 144 Cal.App.4th 287, 291.)  During the hearing, neither mother nor her counsel argued the applicability of this exception.  (*Ibid.*)  There is no sua sponte duty on the part of the court to determine whether the sibling exception to adoptability applied.  (*Id.* at p. 292.)  Absent such a duty, mother's failure to raise the exception at the section 366.26 hearing forfeits the issue for purposes of appeal.  (*Ibid.*)

In any event the children had been placed together during the entire dependency period, were placed together in an adoptive home by adoptive parents who plan to adopt both of them.  Adoption would not significantly interfere with their relationships with each other.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

KING
J.

MILLER
J.

18