50 Cal.Rptr.3d 57 (2006)
143 Cal.App.4th 1326
In re CHRISTOPHER L., a Person Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Debra B., Defendant and Appellant.
No. D048353.
Court of Appeal of California, Fourth District, Division One.
October 16, 2006.
*58 Nicole Williams, under appointment by the Court of Appeal, and Richard Pfeiffer for Defendant and Appellant.
John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.
Robert W. Gehring, under appointment by the Court of Appeal, for the Minor.
McDONALD, J.
Debra B. appeals a judgment terminating her parental rights to her minor son, Christopher L., under Welfare and Institutions Code section 366.26.[1] Debra contends the evidence is insufficient to support the court's findings that the child-objection exception to adoption did not apply to preclude terminating parental rights under § 366.26, subdivision (c)(1)(B). We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
Christopher was born in June 1990. When he was 14 years old, the San Diego *59 County Health and Human Services Agency (Agency) filed a petition under section 300, subdivision (b) on Christopher's behalf. The petition alleged police officers arrested Debra for using narcotics and smoking marijuana in the presence of three-year-old April A., Christopher's sibling.[2] Debra's drug use allegedly rendered her unable to care for her children and placed the children at substantial risk of physical harm.
In the detention report, social worker Sophia Sanchez reported police officers observed Debra smoking marijuana in her home and, because April was in Debra's presence, April inhaled second-hand smoke. The police further discovered marijuana and various drug paraphernalia within April's reach. Christopher admitted knowing Debra had been arrested for "using weed in front of my sister" but denied ever seeing Debra use drugs. Christopher admitted to experimenting with marijuana when he was 10 years old but stated he had not used drugs since that time. Sanchez observed that Christopher appeared depressed and sad. He became teary-eyed during the interview and said he wanted to live with his adult brother. The detention report further detailed four prior child abuse referrals. One referral alleged Christopher had stated at school that he wanted to kill himself. Another referral described an incident during which Christopher held a pair of scissors to a fellow classmate's neck at school. This action resulted in Christopher's hospitalization for three days, during which he was observed to be depressed.
The court scheduled and held a detention hearing and ordered Christopher detained with his paternal aunt and uncle. The court ordered supervised visitation and scheduled a jurisdiction and disposition hearing.
According to the jurisdiction and disposition report, the social worker met with Debra to discuss the case plan and provided her with a list of referrals for individual counseling. Debra represented she had scheduled an appointment to commence participation in the Substance Abuse Recovery Management System program (SARMS) in an effort to address her drug use. Debra admitted to smoking marijuana on the day she was arrested but denied ever using other drugs. The social worker noted Debra's efforts to participate in services represented her strong interest in reunifying with her children. At the July 2005 jurisdiction and disposition hearing, the court declared Christopher a dependent, removed him from Debra's custody, and placed him with relatives. The court ordered Debra to participate in reunification services, including individual counseling and the SARMS program.
During the next six months, Debra participated in a seven-week parenting class but had difficulty answering the social worker's questions concerning basic parenting skills. Further, Debra had difficulty complying with SARMS. Debra admitted to her SARMS counselor that she relapsed and used marijuana. In December 2004, she tested positive for marijuana use. The social worker observed that Debra continued to make efforts to participate in the SARMS program but she required constant reminding to appear for her drug tests, meetings and counseling sessions.
*60 Christopher remained in the care of his paternal aunt and uncle. Christopher's aunt reported he was doing well at home and in school. He earned high grades in his classes, joined the football team, and had many friends. The social worker interviewed Christopher and found he had a positive outlook concerning his current placement. He told the social worker he was happy living with his aunt and uncle and decided he wanted to live there permanently. Christopher's aunt provided him with a nurturing environment and remained committed to his needs. He remained "adamant" that he had no plans to return home and looked forward to remaining with his aunt and uncle. Christopher stated he discussed his decision with Debra and she appeared to be "[okay] about it." However, Christopher did not want to hurt his mother's feelings and hoped to continue having visits with her. After reviewing the Agency's reports, the court continued the dependency and reunification services for Debra. Christopher remained placed with his aunt and uncle.
At the 12-month review hearing, the Agency recommended terminating services and scheduling a selection and implementation hearing under section 366.26. Christopher continued to thrive under the care of his relative caregivers. He continued to earn good grades in high school and expressed interest in going to college. Debra's participation in her case plan had been hampered by her inability to learn and incorporate the lessons covered in drug treatment. She continued to allow persons who abused drugs into her home, and neighbors reported seeing drugs being sold on her property. Debra stopped attending drug treatment through the SARMS program and had not drug tested since June 2005. Her therapist reported Debra had made some progress in counseling but believed she did not fully comprehend the skills and information provided to her. The therapist further believed Debra would not be able to parent a child on her own.
The social worker gave Debra the opportunity to have unsupervised visits with Christopher, which she did not pursue. When visits did occur, the social worker observed Christopher appeared happy to visit with Debra but after a few minutes, he became bored and would wander away from her. The social worker believed he had become "parentified" from worrying about his sister and his mother. He had, however, allowed his aunt to assume the primary responsibility of caring for April. At the 12-month hearing, the court found Debra had not made substantive progress with her case plan and terminated reunification services. The court scheduled a section 366.26 hearing.
In March 2006 the court held a contested section 366.26 hearing. The court considered the Agency's reports, a bonding study, and heard testimony from Christopher. The section 366.26 report stated Debra's visits with Christopher were inconsistent. She had not contacted the social worker about scheduling visits and Christopher's aunt revealed Debra had gone as long as one month without a visit. The social worker believed Debra did not have a beneficial parent-child relationship with Christopher because she did not occupy a parental role in his life. When the social worker asked Christopher where he wanted to live, he stated he wanted to live with his aunt and uncle and was willing to be adopted by them. The report further noted Christopher's relative caregivers wanted to adopt him and raise him as their own child.
The court also considered a bonding study analyzing the relationship between Christopher and Debra. Dr. Klein observed Christopher appeared to have *61 taken on a parental role with Debra in contrast to Debra parenting him. He believed Christopher shared a "mild" bond with Debra that was not parental in nature. Dr. Klein instead noted Christopher had a stronger connection with his relative caregivers. Christopher stated to Dr. Klein that he did not want to be separated from his sister.
Christopher testified at the section 366.26 hearing that he was in the 10th grade and had lived with Debra since the sixth grade; he had lived with his sister April for her entire life and was very close to her. He had not had any recent visits with Debra and was unable to contact her because she had been evicted from her home and did not have a telephone number. He enjoyed visits with Debra and hoped to visit with her again in the future.
Christopher further testified the social worker explained adoption to him and he understood it to mean his aunt and uncle would become his parents and his mother would no longer be his legal mother. When Debra's attorney asked Christopher if he wanted to be adopted, he replied "[y]es." He explained he saw his aunt and uncle as being "basically like [his] parents" and would feel "comfortable if [he] was adopted by them."
Christopher was then asked the following questions by Debra's attorney:
Q: "If you could stay living with your aunt and uncle but your mom could stay your legal mom, would you want that?"
A: "Don't matter."
Q: "Okay. What do you mean by it wouldn't matter?"
"I would just prefer being adopted."
"Okay. Would you want to be adopted if it meant that  if there was a chance you couldn't ever see your mom again?"
"No, because I would like to see my mom again."
Q. "Did the social worker tell you that if you were adopted there is a chance that you might never see your mom again?"
A. "No."
Q. "Would you want to be adopted if you couldn't see you mom again?"
A. "No."
On cross-examination, Christopher was asked whether he would be happy or sad if the court ordered he be adopted by his aunt and uncle. Christopher answered he would be happy and he was "okay" with the prospect of living in the custody of his relative caregivers until he was an adult. He expressed that he felt safe and comfortable in their care. April also lived with him in his aunt and uncle's house. Christopher wanted to live with April and expressed his wish that she be adopted by his relative caregivers as well.
After considering this testimony and the Agency's reports, the court found Christopher would likely be adopted within a reasonable time if parental rights were terminated, and none of the exceptions to termination of parental rights under section 366.26, subdivision (c)(1) applied. The court terminated parental rights and referred Christopher for adoption.

DISCUSSION

I

Application of Section 366.26, Subdivision (c)(1)(B)
Debra asserts the court should have applied the child-objection exception under section 366.26, subdivision (c)(1)(B) to preclude termination of parental rights because Christopher "unequivocally" testified he did not want to be adopted if it meant he could not see her again. She contends his testimony obligates the court *62 to apply the exception to adoption without further consideration of the record. Debra further contends the court erred by finding termination of her parental rights was in Christopher's best interests.[3]

A
Preliminary, we note that we find no reported cases addressing the standard of review a court must use in addressing a juvenile court's finding that the child-objection exception of section 366.26, subdivision (c)(1)(B) does not apply. However, "[a] finding no exceptional circumstance exists is customarily challenged on the sufficiency of the evidence." (In re Autumn H. (1994) 27 Cal.App.4th 567, 575, 32 Cal. Rptr.2d 535, citing In re Jesse B. (1992) 8 Cal.App.4th 845, 851, 10 Cal.Rptr.2d 516.) The issue of sufficiency of the evidence in dependency cases is governed by the same rules that apply to all appeals. If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we uphold those findings. (In re Brandon C. (1999) 71 Cal.App.4th 1530, 1534, 84 Cal.Rptr.2d 505.) We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or evaluate the weight of the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record most favorably to the juvenile court's order, and affirm the order even if other evidence supports a contrary conclusion. (In re Casey D. (1999) 70 Cal.App.4th 38, 52-53, 82 Cal.Rptr.2d 426; In re Baby Boy L. (1994) 24 Cal.App.4th 596, 610, 29 Cal. Rptr.2d 654.) The appellant has the burden of showing the finding or order is not supported by substantial evidence. (In re Geoffrey G. (1979) 98 Cal.App.3d 412, 420, 159 Cal.Rptr. 460.)
"Adoption, where possible, is the permanent plan preferred by the Legislature." (In re Autumn H., supra, 27 Cal.App.4th at p. 573, 32 Cal.Rptr.2d 535.) After a minor is found to be adoptable, "the court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a compelling reason for finding that termination of parental rights would be detrimental to the child. The specified statutory circumstancesactually, exceptions to the general rule that the court must choose adoption where possible`must be considered in view of the legislative preference for adoption when reunification efforts have failed.' [Citation.] At this stage of the dependency proceedings, 'it becomes inimical to the interests of the minor to heavily burden efforts to place the child in a permanent alternative home.' [Citation.] The statutory exceptions merely permit the court, in exceptional circumstances [citation], to choose an option other than the norm, which remains adoption." (In re Celine R. (2003) 31 Cal.4th 45, 53, 1 Cal.Rptr.3d 432, 71 P.3d 787.)
*63 Section 366.26, subdivision (c)(1)(B) is an exception to the Legislature's preference for adoption. It permits the court to find termination of parental rights detrimental to a child if "[a] child 12 years of age or older objects to termination of parental rights." Before terminating parental rights, the juvenile court must consider the child's wishes, to the extent that they are ascertainable. (§ 366.26, subd. (h); In re Leo M. (1993) 19 Cal.App.4th 1583, 1591, 24 Cal.Rptr.2d 253.) The juvenile court should explore a child's feelings toward his or her parents, foster parents, and prospective adoptive family. (In re Amanda D. (1997) 55 Cal.App.4th 813, 820, 64 Cal. Rptr.2d 108; In re Leo M., at pp. 1591-1592, 24 Cal.Rptr.2d 253.) Evidence of a child's wishes may, but need not, be in the form of direct testimony at the parental rights termination hearing; such evidence may also appear in the Agency's reports. (In re Amanda D., at p. 820, 64 Cal. Rptr.2d 108; In re Leo M., at p. 1591, 24 Cal.Rptr.2d 253.) After considering Christopher's testimony at the section 366.26 hearing and reviewing evidence of his hope to live with his aunt and uncle permanently throughout the dependency proceedings, the juvenile court found Debra did not meet her burden of showing the exception to termination of parental rights under section 366.26, subdivision (c)(1)(B) applied.

B
Because Christopher was over the age of 12, he could object to the termination of Debra's parental rights. The record here, however, shows Christopher did not unequivocally object to the termination of parental rights. He instead repeatedly asserted his preference for adoption. Christopher testified he felt comfortable living with his aunt and uncle and had known them since he was a child. When asked if he wanted to be adopted, he replied "[y]es." In response to the question, "Would you want to be adopted if ... you couldn't ever see your mom again?" he replied no and stated he would like to see Debra again. Upon further questioning, Christopher testified he would be happy if the court, at the end of the section 366.26 hearing, ordered his aunt and uncle to adopt him. He explained he was "okay" with the idea of living with his aunt and uncle until he was an adult because they made him feel safe. He further expressed wanting his sister to live with him and hoped she would be adopted by his relatives. Moreover, the Agency's reports showed that throughout the dependency, Christopher wanted to be adopted by his relatives. Christopher described his caregivers as his second parents. When the social worker asked him where he wanted to live, he stated he wanted to live with his aunt and uncle. He further said he was willing to be adopted by them. Christopher's statements do not constitute unequivocal objections. Rather, the statements appear to reveal an internal conflict between his hope to be adopted and live in a stable and loving environment, and his hope to see Debra again. Even though Christopher wants to see Debra again, he repeatedly expressed his hope to be adopted and live with his sister under the care of his aunt and uncle.
We do not consider each of Christopher's statements in a vacuum. Our review is deferential. (In re Basilio T. (1992) 4 Cal.App.4th 155, 168, 5 Cal. Rptr.2d 450.) It was the juvenile court's task to determine the testimony that accurately represented Christopher's state of mind with respect to adoption. His testimony on direct and cross-examination was consistent with statements made to the Agency during the months before the hearing. Given the deference we must *64 accord to a juvenile court's factual findings, it was reasonable for the court to resolve conflicts in favor of finding Christopher favored adoption. We therefore do not construe Christopher's wish to continue to see Debra as undermining or being contrary to his wish to be adopted by his aunt and uncle. The evidence afforded the juvenile court a reasonable basis for ascertaining Christopher's wishes. (See In re Amanda D., supra, 55 Cal.App.4th at p. 820, 64 Cal.Rptr.2d 108.) Consequently, on review of the entire record, substantial evidence supports the juvenile court's finding that Christopher's statements did not constitute objections, but instead amounted to statements of preference. Substantial evidence supports the juvenile court's finding that Debra did not meet her burden to show Christopher objected to termination of parental rights. Because there is substantial evidence to support the juvenile court's finding that section 366.26, subdivision (c)(1)(B) did not apply, we do not decide whether an unequivocal objection by a minor 12 years or older to termination of parental rights prevents termination of parental rights as a matter of law.

C
Debra asserts the child-objection exception does not require the court to consider whether it was in Christopher's best interests to terminate parental rights. She contends counsel for the Agency and Christopher set forth a best interests argument that the court improperly adopted.
A section 366.26 hearing is "concerned only with a long-term placement plan for the child, the preferred alternative being adoption and termination of parental rights. The court first decides whether it is likely the child will be adopted if parental rights are terminated. If so, the court examines whether termination of parental rights will be detrimental to the minor based on four enumerated circumstances." (In re Ninfa S. (1998) 62 Cal.App.4th 808, 811, 73 Cal.Rptr.2d 209.) No separate, general best interest exception to adoption exists under section 366.26. (In re Jessie G. (1997) 58 Cal.App.4th 1, 8, 67 Cal.Rptr.2d 811.) However, as this court has stated, "consideration of the child's best interests is inherent in the legislative procedure for selecting and implementing a permanent plan." (In re Tabatha G. (1996) 45 Cal.App.4th 1159, 1165, 53 Cal. Rptr.2d 93.) The purpose of the specified exceptions to adoption provided in section 366.26, subdivision (c)(1) is to ensure termination of parental rights is in the minor's best interests and is the least detrimental alternative. (Ibid.; see § 366.26, subd. (h)(1).) Accordingly, the court should consider the minor's best interests when making its determination in a section 366.26 hearing. (In re Tabatha G., at p. 1165, 53 Cal.Rptr.2d 93.) If no exceptions apply, it is in the minor's best interests to terminate parental rights. (See In re Ninfa S., at p. 811, 73 Cal.Rptr.2d 209.)
Here, the record shows the court did not adopt a best interests exception to adoption. The court instead found by clear and convincing evidence that Christopher was likely to be adopted. It found no exceptions under section 366.26, subdivision (c)(1) applied. Having made the necessary findings under the statutory scheme to terminate Debra's parental rights, it was inherent in the legislative scheme for the court to find it in Christopher's best interests to pursue a permanent plan of adoption. By the time of the section 366.26 hearing, Christopher had been subjected to dependency proceedings for more than 18 months. He was in a stable, nurturing environment with relative caregivers committed to adopting him. The Legislature has decreed that a permanent plan other *65 than adoption "is not in the best interests of children who cannot be returned to their parents. These children can be afforded the best possible opportunity to get on with the task of growing up by placing them in the most permanent and secure alternative that can be afforded them." (In re Beatrice M. (1994) 29 Cal.App.4th 1411, 1419, 35 Cal.Rptr.2d 162.)

DISPOSITION
The judgment is affirmed.
McCONNELL, P.J., and IRION, J., concur.
NOTES
[1] All statutory references are to the Welfare and Institutions Code.
[2] Debra filed a notice of appeal with respect to Christopher and April. Debra's opening brief does not address the termination of parental rights to April. Consequently, the appeal with regard to April has been abandoned. (In re Barbara R. (2006) 137 Cal. App.4th 941, 949, 40 Cal.Rptr.3d 687.)
[3] Debra also asserts Family Code section 8602 applies in this case. Family Code section 8602 provides "[t]he consent of a child, if over the age of 12 years, is necessary to the child's adoption." Dependency proceedings are special proceedings governed by their own rules and statutes. (§ 300 et seq.; Cal. Rules of Court, rule 1440 et seq.) Statutes applicable to civil cases are not applicable to dependency actions unless expressly made so. (In re Joshua G (2005) 129 Cal.App.4th 189, 198, 28 Cal.Rptr.3d 213; In re Daniel S. (2004) 115 Cal.App.4th 903, 911, 9 Cal. Rptr.3d 646.) Further, although section 366.26 explicitly adopts certain provisions of the Family Code, there is no provision under section 366.26 adopting Family Code section 8602 for juvenile dependency court proceedings. Therefore, Family Code section 8602 is not directly applicable to our consideration of the applicability of section 366.26, subdivision (c)(1)(B). However, at the time of Christopher's adoption hearing, Family Code section 8602 will be applicable and his adoption will require his express consent. (See § 366.26, subd. (a).)