Filed 7/18/14  In re A.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.M. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E059396 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ1300332) |
| v. | OPINION |
| E.J., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Monterosso, Judge.  Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Anna M. Marchand, Deputy County Counsel, for Plaintiff and Respondent.

E.J. (mother) contends there was insufficient evidence to support the juvenile court's jurisdictional findings under Welfare and Institutions Code[1] section 300, subdivisions (b) and (g), regarding her children, A.M. and J.M. (the children). Mother argues those findings should be reversed, and the dispositional order should accordingly be reversed, as well. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On May 20, 2013, the Riverside County Department of Public Social Services (the department) filed a section 300 petition on behalf of the children, alleging that they came within subdivisions (b) (failure to protect) and (g) (no provision for support). A.M. was four years old at the time, and J.M. was two years old. The petition alleged, under section 300, subdivision (b), that mother had extensive substance abuse issues, including marijuana and alcohol abuse, which limited her ability to provide her children with adequate care and supervision; and she neglected their safety and well-being and created a detrimental home environment. The other allegations under subdivision (b) and subdivision (g) concerned the children's father, who is not a party to this appeal.[2]

In a detention report, the social worker reported that on February 25, 2013, a referral was received alleging general neglect. It was reported that each time

_____

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

[2] Since the children's father is not a party to this appeal, we will not discuss any allegations or findings regarding him.

mother was seen, she was wearing sunglasses and "seem[ed] drugged up." She did not know the date, slurred her words, looked anorexic, and said she had no energy. She was only 24 years old. Mother said her children were too heavy for her to carry, although the children appeared to be underweight and short for their ages.

The social worker reported that she made an unannounced visit to mother's home on March 28, 2013. She was invited in by mother's friend, who was babysitting the children. Mother's friend said mother had been in the hospital for about one week with a swollen face, possibly caused by her liver problems. Mother's friend and parents were taking care of the children while she was in the hospital.

The social worker made a subsequent unannounced home visit, but no one answered the door, even though there were cars in the driveway. The social worker left her business card on the door with a request to contact her. A few days later, mother's sister, Irene, left the social worker a voicemail with her and mother's phone numbers. The social worker called back and left voicemails. Over a week later, the social worker called mother again and spoke to her. When asked if she had received the business cards left on the front door, mother said she thought she did. When asked why she had not contacted the social worker, she responded that she "[had not] gotten to them." The social worker asked mother why she was hospitalized, and she said, "I fell I guess." Mother denied that her

3

face was swollen and said she did not know if she was hospitalized due to her alcohol usage.  Mother also said the last time she drank alcohol was approximately one year ago.  Mother said that her parents had obtained guardianship of the children.

A few days later, the social worker had a brief telephone conversation with mother's sister, Irene.  Irene explained that mother and the children are brought to her home, and she or an adult supervises and assists mother with the children.  The children were never left alone in mother's care.

The social worker further reported that mother completed a urine drug test on April 30, 2013, and tested negative for all substances.  Regarding her medical conditions, mother's diagnoses were as follows:  "alcoholic cirrhosis of liver, gallstones, abnormal accumulation of fluid in the abdominal, liver encephalopathy, malmution [*sic*], and acute non-traumatic [k]idney injury."  Mother reported that she began using alcohol when she was 13 years old, and started drinking heavily after her brother passed away from alcoholism three and one-half years ago.  She drank three cups of vodka everyday for two to three years.  Mother's parents and sister stated they did not believe it had been a year since mother drank alcohol.  Her father said it may have only been seven months.  Mother's father was a recovering alcoholic.  In addition, mother's parents said they had not applied for legal guardianship of the children.

4

The social worker further reported that on May 16, 2013, she visited mother at home. There was a babysitter there to watch the children and assist mother around the house. The social worker observed that both children went to the babysitter, and that J.M. came over to the social worker for her to hold him, twice. When she attempted to redirect J.M. to mother, he stayed with her. When mother verbally called him over, he did not respond to her. The social worker observed that mother did not initiate any contact with the children verbally or physically. The social worker had observed the same lack of interaction between mother and the children at a previous visit.

At the detention hearing on May 21, 2013, the court found a prima facie showing had been made that the children came within section 300, subdivisions (b) and (g). The court allowed the children to remain in mother's custody upon the conditions that she reside in her parents' home and that there be no alcohol in the home.

*Jurisdiction/Disposition Report*

The social worker filed a jurisdiction/disposition report on July 2, 2013, recommending that the court find the allegations in the section 300 petition true as alleged, and that mother be provided with family maintenance services. The social worker stated there was sufficient evidence to support the allegation in section 300, subdivision (b), that mother had extensive substance abuse issues, which limited her ability to provide the children with adequate care and supervision. The

social worker reported that in July 2012, mother was admitted to the hospital for excessive bleeding due to liver failure/liver disease. She was drug tested at that time and tested positive for methamphetamine and marijuana. Her mother made a statement that mother tended to drink a lot. Despite mother's substance abuse, her alcohol-related medical conditions, and her family's history of abusing alcohol, she failed to ever enroll in a program to address alcohol addiction. The social worker opined that mother was at a high risk of relapse and/or continued use.

The social worker interviewed mother's father, who stated that his family continued to support mother and the children. He reported that mother continued to reside in his home, and that he hired a babysitter to be present in the home to supervise mother and the children.

As to the children, the social worker reported that they appeared to be developing at an age-appropriate level, and they appeared to be happy.

The social worker filed an addendum report on August 12, 2013. She reported that the court ordered the department to assess the maternal grandparents for legal guardianship of the children. When the social worker asked mother why her parents did not previously follow through with filing for legal guardianship, mother said it was her fault because she "thought this would just all go away." The social worker told mother she would benefit from a substance abuse treatment program to address her addiction and educate her on relapse prevention. Mother replied that she was attending Alcoholics Anonymous (AA) meetings once a

week.  When asked where she attended, she said she went to different locations, and that she also participated in AA meetings at church.  The social worker stressed that mother was in need of intense substance abuse treatment, and stated that, with continued supervision, the department could ensure the children's safety while mother participated in services.  Thus, the social worker continued to recommend that mother be provided with family maintenance services.

The court held a contested jurisdiction hearing on August 12, 2013.  The department submitted on the petition and the reports filed.  Mother's counsel stated that it submitted documentation to the court and also had some stipulated testimony on behalf of mother.  He stated that if she were called to testify, mother would say she was currently attending AA meetings approximately once a week, and that she had attended AA four times so far.  She would also testify that she had a patient-compliance agreement with regard to her medical issues, and that part of the agreement required her to participate in AA meetings.  Furthermore, mother would testify that she had not drunk alcohol in approximately one year, and she was currently able to care for her children.  All counsel stipulated that was what mother would testify to, and they waived cross-examination.

Mother's counsel proceeded to argue that although mother did not deny she had a history of substance abuse, there was no indication she had been abusing drugs or alcohol recently.  He also claimed her medical issues were completely separate from any current substance abuse.  He further argued that there were no

concerns about her ability to take care of the children, since she and her family worked as a team.

The children's counsel asked the court to find the allegations in the petition true and order family maintenance. Because of mother's history and medical conditions, she felt it would be better for the court to be involved to ensure that mother was receiving the services needed.

County counsel argued that mother's family was taking care of the children because mother was weakened by her liver failure. She asserted that it was the alcohol that ruined mother's liver. Counsel pointed out that it was only 12 months ago that mother tested positive for methamphetamine and marijuana, and that many family members said she drank a lot. Counsel pointed out that there was a deep-rooted alcohol addiction in mother's family, but mother lacked insight and thought "this was all going to go away." Although the social worker had been asking mother for documentation of the AA meetings she attended, mother had not produced any until that very day, and that documentation showed that she only attended two meetings in the last 30 days.

After hearing the arguments and reading the reports, the court noted mother's serious health issue involving cirrhosis of the liver, and its particular concern with the evidence of some of mother's conduct, such as, what it described as her "suspicious fall" that led to this investigation. The court found by a preponderance of the evidence that the allegations in the petition were true. The

8

court noted that it only had proof of attendance at two AA meetings, and that someone in mother's position should have been going more than once a week. The court set a review hearing date and addressed mother directly. The court told mother that she needed to "get on the right road" so that it could see her being diligent about staying alcohol free. The court added that if she could show the court there was no suspicion that she was using alcohol or any illegal substance for a period of time before the review hearing, it would be happy to terminate the case prior to that date. The court wanted to see mother at least show a sustained commitment to AA. It then wished her luck in getting her liver transplant. The court ordered a plan of family maintenance services, which included an in-home parenting program, regular attendance at AA, and completion of an alcohol rehabilitation program, if recommended after assessment.

## ANALYSIS

### I. The Court Properly Took Jurisdiction of the Children

In sustaining the jurisdictional finding alleged, the juvenile court effectively determined that the children were subject to its jurisdiction because there was a substantial risk they would suffer "serious physical harm or illness," resulting from mother's inability to provide them with regular care due to her substance abuse. (§ 300, subd. (b).) Mother argues there was insufficient evidence to support the juvenile court's jurisdictional finding under section 300, subdivision (b). She contends that there was no evidence she was currently using

9

alcohol or that her history of substance abuse placed her children at risk. She

asserts that, to the contrary, the evidence showed that the children were healthy,

happy, developing appropriately, and well cared for. We conclude that the court

properly took jurisdiction of the children.

A. *The Evidence Was Sufficient*

Section 300, subdivision (b), provides that the juvenile court may adjudge a

child a dependent of the juvenile court when the child has suffered, or there is a

substantial risk that the child will suffer, serious harm or illness, "as a result of the

failure or inability of his or her parent or guardian to adequately supervise or

protect the child, or . . . by the inability of the parent or guardian to provide regular

care for the child due to the parent's or guardian's mental illness, developmental

disability, or substance abuse." "The standard of proof required in a section 300

dependency hearing is the preponderance of evidence. [Citation.]" (*In re

Basilio T.* (1992) 4 Cal.App.4th 155, 168 (*Basilio T.*).)

"The issue of sufficiency of the evidence in dependency cases is governed

by the same rules that apply to all appeals. If, on the entire record, there is

substantial evidence to support the findings of the juvenile court, we uphold those

findings. [Citation.] We do not pass on the credibility of witnesses, attempt to

resolve conflicts in the evidence or evaluate the weight of the evidence. Rather,

we draw all reasonable inferences in support of the findings, view the record most

favorably to the juvenile court's order, and affirm the order even if other evidence

supports a contrary conclusion. [Citations.] The appellant has the burden of showing the finding or order is not supported by substantial evidence. [Citation.]" (*In re Christopher L.* (2006) 143 Cal.App.4th 1326, 1333.)

The petition here alleged that "mother [had] extensive substance abuse issues, including but not limited to marijuana and alcohol abuse, thereby limiting her ability to provide her children with adequate care and supervision, neglecting their safety and well[-]being, and creating a detrimental home environment." There was substantial evidence to support the petition. The evidence showed that on February 25, 2013, the department received a referral because each time mother was seen, she was wearing sunglasses and appeared to be on drugs, she did not know the date, she slurred her words, and she looked anorexic. Mother herself said she had no energy and the children were too heavy for her to carry. Furthermore, mother was recently hospitalized for one week, but she was not sure why. Her discharge documents from the hospital showed that she had numerous and serious medical conditions, including alcoholic liver cirrhosis, gallstones, abnormal accumulation of fluid in the abdomen, liver encephalopathy, and acute non-traumatic kidney injury. She was taking several medications, and was seeing a liver specialist. Mother was on a waiting list for a liver transplant.

The evidence further showed that mother had a history of substance abuse. She began using alcohol when she was only 13 years old, and she said her alcoholism was "really bad" approximately three and one-half years ago. She

11

admitted that she drank three cups of vodka everyday for two or three years. Although mother said she had not had alcohol in one year, her family did not believe it had been that long. In 2011, mother was arrested for driving under the influence of alcohol. In 2012, a referral was received alleging general neglect. It alleged that mother was abusing alcohol and drugs and was not tending to the children's needs. At that time, she was admitted to the hospital because of excessive bleeding due to liver failure/liver disease, and she tested positive for methamphetamine and marijuana. Mother also had a family history of alcohol addiction. Her father was a recovering alcoholic, and her brother died of alcoholism.

In addition, the evidence showed that mother was not serving in the capacity of a parent to her children. While her testimony stated that she could care for her children, the evidence demonstrated that she completely relied on others to take care of them. The children were never left alone in mother's care. When mother and the children would go to her sister's house, her sister or another adult would supervise and assist her with the children. When mother and the children were at the maternal grandparents' home, the maternal grandmother was the primary caregiver. When the grandparents were at work, they arranged for a babysitter to be at home with mother. At one home visit, the social worker observed that both children would go to the babysitter, rather than mother. When the social worker asked mother to show her how she conducted a diaper change,

12

she observed that mother had great difficulty pulling J.M. up to the couch. The social worker also observed that mother did not initiate any contact with the children verbally or physically.

In sum, mother admittedly had a serious problem with alcohol that she had not fully addressed. The current dependency was initiated because she was recently seen numerous times appearing to be on drugs and/or alcohol. Her alcoholism has clearly affected her health (e.g., alcoholic cirrhosis of the liver) to the point where she has been hospitalized for liver failure, and she needs a liver transplant. Despite her serious alcohol-related medical conditions and issues, mother has never sought any type of substance abuse treatment on her own. Her family has indicated that the only way she will seek treatment is if she is forced to do so. Moreover, mother was limited in her ability to care for her children, as shown by the fact that she always had to have another adult present to supervise her and the children. Viewing the evidence in the light most favorable to the juvenile court's order, as we must, we conclude that there was substantial evidence to support the court's jurisdiction over the children. (*Basilio T.*, *supra*, 4 Cal.App.4th at p. 168.)

Mother claims that the issues raised in this case were based on speculative concerns. She argues there was no evidence that her past alcohol consumption had caused the children to suffer serious physical harm or that it created a risk of harm in the future. In support of her argument she cites such cases as *In re David M.*

13

(2005) 134 Cal.App.4th 822 (*David M.*) and *In re Destiny S.* (2012) 210 Cal.App.4th 999 (*Destiny S.*), but these cases are distinguishable. In *David M.*, the court reversed the trial court's jurisdictional findings under section 300, subdivision (b), concluding that the record lacked any evidence that the mother's substance abuse problem was tied to any actual harm or a risk of substantial harm to the children.[3] (*David M.*, at p. 829.) The *David M.* court noted the appellate record only showed that mother had a substance abuse problem with marijuana in a "limited respect." (*Id*. at p. 830.) The evidence showed that the mother used marijuana "off and on" over 10 years before the children were detained. (*Id*. at p. 826.) She tested positive for marijuana metabolites when she was pregnant with her youngest child, A. (*Ibid*.) The social worker "never spoke to anyone who had seen mother use drugs during her pregnancy with A., or had seen her in possession of drugs or drug paraphernalia." (*Id*. at p. 827.) The appellate court acknowledged the mother's use of marijuana on at least one occasion while pregnant with A., but noted that "A. tested negative for any drugs at birth, was healthy at birth, and showed no signs of withdrawal from any controlled substances." (*Id*. at p. 829.) Although the court accepted as true that the mother continued to suffer from a substance abuse problem, it concluded there was no

---

[3] It was also alleged that the mother in *David M.* had mental health issues. However, since mother here only cites this case with regard to the mother's problem with substance abuse, we will also only discuss this aspect of the court's jurisdictional findings.

14

evidence presented that this problem caused, or created a substantial risk of causing, serious harm to the children. (*Id*. at p. 830.)

Unlike *David M.*, *supra*, 134 Cal.App.4th 822, the evidence in the instant case showed that mother had an extensive problem with alcohol. (See *ante*.) Mother and her family members all reported that she abused alcohol. Furthermore, the evidence showed that her problems with alcohol seriously affected her health and limited her ability to care for her children. (See *ante*.) Mother points out that the evidence showed her children were well cared for, healthy, and happy. However, the evidence also demonstrated that the children were only doing well because of the support from mother's family. While the mother in *David M.* took good care of her children by herself, it was reasonable to infer from the evidence in the instant case that mother was not able to take care of her children by herself. Mother's family never left the children alone in her care.

Mother also relies upon *Destiny S.*, *supra*, 210 Cal.App.4th 999. In that case, the evidence showed that the mother was currently using methamphetamine and marijuana. (*Id*. at p. 1001.) The juvenile court took jurisdiction over the mother's child, a preteen, finding that "she was at risk of serious physical harm because she had often been late to class in the previous school year and her mother was in denial as to her drug habit." (*Id*. at p. 1002.) The appellate court reversed the jurisdictional finding because the record lacked any evidence that the child was at risk of suffering physical harm as the result of the mother's use of illegal drugs.

15

(*Id*. at p. 1003.)  The court noted that tardiness to school in the past could not support a finding that there was a present "substantial risk" of suffering serious physical harm.  (*Ibid*.)

Unlike *Destiny S.*, *supra*, 210 Cal.App.4th 999, the children here were at much more risk than just being tardy to school.  Mother's substance abuse and medical condition apparently impaired her ability to function as a mother.  She had no energy, could not carry her children, and had difficulty trying to change J.M.'s diaper.  She also had no apparent bond with them.  Mother asserts that there was "no evidence that [she] was currently using drugs or alcohol which further demonstrates the lack of causation in this case."  However, the evidence indicated that she was using drugs at the time the dependency was initiated (e.g., she slurred her words, did not know the date, had no energy, etc.).  We further note that mother admitted she started drinking alcohol at age 13 and that she drank heavily, especially when her brother died.  While evidence of past conduct is not sufficient by itself to support a finding that circumstances at the time of the hearing subject the children to a risk of harm, it is probative of current conditions.  (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.)  Moreover, there was "'some reason to believe the acts may continue in the future.' [Citations.]"  (*Ibid*.)  Mother had a nonchalant attitude about her problem, as shown by her failure to ever participate in a substance abuse program and her minimal attendance at AA meetings.

It was reasonable for the social worker to infer from the evidence that mother was at a high risk of relapse and/or continued use.

Thus, contrary to mother's claim, the court's concerns were not based on speculation. Given the nature of mother's medical condition, and her apparent lack of insight into the seriousness of her substance abuse problem, it was reasonable to infer the children were at substantial risk of serious harm to support the court's order that the children be declared dependents of the court. (See *Basilio T.*, *supra*, 4 Cal.App.4th at p. 169.)

## II. The Juvenile Court's Disposition Order for Family Maintenance Was Proper

Mother simply claims that, since there was no evidence to support the court's jurisdiction over the children, the court's dispositional order should accordingly be vacated. In light of our conclusion that there was sufficient evidence to support the court's jurisdiction, we reject mother's claim.

We further note that "[t]he court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the court's determination in this regard absent a clear abuse of discretion. [Citations.]" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) The court here ordered that the children stay in mother's custody under a plan of family maintenance. Her case plan included an in-home parenting program, regular attendance at AA, and

17

completion of an alcohol rehabilitation program if recommended after she is assessed. This case plan is geared toward helping mother to gain and/or maintain sobriety and to help improve her parenting skills. We see no abuse of discretion.

DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

RICHLI

J.

MILLER

J.