Filed 6/7/21  In re Tu.N. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Tu.N., a Person Coming Under the Juvenile Court Law. | |
| MARIN COUNTY HEALTH & HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br>v.<br>R.N.,<br>    Defendant and Appellant. | A161089<br><br>(Marin County Super. Ct. No. JV26733A) |

R.N. (father) appeals from a juvenile court order terminating parental rights as to his then 13-year-old daughter, Tu.N., at the conclusion of a selection and implementation hearing (Welf. & Inst. Code, § 366.26).[1]  Father contends the court erred by failing to ascertain Tu.N.'s "understanding of the consequences of adoption" before terminating parental rights.

We disagree and affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

## I.  FACTS AND PROCEDURAL HISTORY

This case has a lengthy history.  We recite only those facts necessary to resolve the issue on appeal, omitting references to family members who are not parties.  We incorporate by reference our unpublished opinions in father's prior cases, *In re H.N.* (Nov. 21, 2019, A156618) and *R.N. v. Superior Court* (May 15, 2020, A159456).

### A.  Dependency Through 12-month Review

Tu.N. was born in 2007.  In 2018, the Marin County Department of Children and Family Services (Department) filed—and later amended—a petition alleging Tu.N. came within section 300, subdivisions (b) and (g) based on, among other things, father's paranoia and his failure to provide basic necessities for Tu.N.  The court declared Tu.N. a dependent, removed her from parental custody, and ordered reunification services for father.  In September 2019, Tu.N. was placed with her maternal grandparents (grandparents).  At the 12-month review hearing in January 2020, the court terminated father's reunification services and set a selection and implementation hearing (.26 hearing).

### B.  .26 Hearing

The Department recommended terminating father's parental rights and ordering adoption as Tu.N.'s permanent plan.  Grandparents wanted to adopt Tu.N. and she was "thriving" in their care.  The social worker reviewed the differences between adoption and guardianship with Tu.N., and she received "opportunities to ask questions and think about her decision regarding her permanent plan."  She understood "the permanent plan of adoption" and "expressed her interest in being adopted" by grandparents.  Tu.N. acknowledged the decision was "difficult . . . due to her loyalty to her parents," but she believed adoption was "in her best interest" because her

2

parents could not care for her and because she trusted grandparents and felt safe with—and loved by—them.

At the .26 hearing in September 2020, the social worker testified that she had explained the differences between adoption and guardianship to Tu.N.—then 13 years old—in an "age-appropriate manner." The social worker told Tu.N. adoption was "more permanent" than guardianship and that with adoption, grandparents would be Tu.N.'s legal parents. The social worker also explained that if grandparents adopted Tu.N., "there would not be a court order for contact." Instead, Tu.N. and grandparents would decide whether she would communicate or visit with father, whereas with guardianship, "there would be a court order." Nevertheless, Tu.N. wanted to be adopted.

Father did not appear at the .26 hearing. Through counsel, father stated "his opposition to the adoption." Father's counsel argued there was insufficient evidence Tu.N. understood what adoption "actually mean[t] for her relationship" with father. According to counsel, the social worker's explanation that "there won't be a court order for visitation" was not "the same as making it clear" to Tu.N. that if parental rights were terminated, father "would have no legal right to have any contact" with Tu.N. Counsel for the Department argued Tu.N. was adoptable, that there were no legal impediments to adoption, and that Tu.N. had clearly articulated her unwavering desire to be adopted. Counsel urged the court to terminate father's parental rights and order adoption as Tu.N.'s permanent plan.

The court agreed with the Department. It found by clear and convincing evidence Tu.N. was adoptable and that there were no exceptions to adoption. In making its ruling, the court considered Tu.N.'s desire to be adopted and determined adoption was in her best interest. The court

3

terminated father's parental rights and ordered adoption as Tu.N.'s permanent plan.

## II. DISCUSSION

Father's sole claim on appeal is the court erred by failing to ascertain whether Tu.N. understood the "consequences of adoption" before terminating parental rights. We address—and reject—this argument on the merits.

When a court cannot safely return a dependent child to a parent's custody within statutory time limits, the court must set a .26 hearing. The goal of that hearing is " 'to select and implement a permanent plan for the child.' " (*In re Caden C.* (May 27, 2021, S255839) ___Cal.5th___ [2021 Lexis 3522 pp. *14].) Adoption is the preferred permanent plan. (*In re N.S.* (2020) 55 Cal.App.5th 816, 846.) If the court finds by clear and convincing evidence " ' "the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." ' " (*Ibid.*)[2]

"Before terminating parental rights, the juvenile court must consider the child's wishes, to the extent that they are ascertainable. . . . Evidence of a child's wishes may . . . appear in the Agency's reports." (*In re Christopher L.*, *supra,* 143 Cal.App.4th at p. 1334; § 366.26, subd. (h)(1) [court must consider child's wishes and act in child's best interests].) The court need not "specifically ask how the child feels about ending the parental relationship" and the child need not " 'specifically understand the proceeding is in the nature of a termination of parental rights.' " (*In re Amanda D.* (1997) 55

---

[2] A court may find termination of parental rights detrimental when a " 'child 12 years of age or older objects to termination of parental rights' " (*In re Christopher L.* (2006) 143 Cal.App.4th 1326, 1334) or where "the parent has regularly visited with the child, that the child would benefit from continuing the relationship, and that terminating the relationship would be detrimental to the child." (*In re Caden C., supra,* at *13.) Father does not contend either of these exceptions applies.

Cal.App.4th 813, 820.) Rather, the court should explore the child's feelings regarding her biological parents, prospective adoptive parents, and current living arrangements. (*Id.* at p. 820.) We review the court's factual findings regarding a child's wishes and best interests for substantial evidence. (*In re Christopher L.,* at p. 1335; *In re Amanda D.,* at p. 821.)

Here, ample evidence demonstrates Tu.N.'s wish was to be adopted by grandparents, and that adoption was also in her best interests. Tu.N. clearly and repeatedly expressed a preference for adoption; she also acknowledged adoption was in her best interest because her parents could not care for her and because she trusted grandparents and felt safe and loved in their home. Father's argument to the contrary is premised on a misunderstanding of the law. As stated above, the court was not required to ensure that Tu.N. understood the legal nuances of adoption before terminating parental rights. (*In re Amanda D., supra,* 55 Cal.App.4th at pp. 820–821.) Father's argument also ignores the standard of review, which requires us to defer to the lower court's factual findings and precludes us from reweighing the evidence or substituting our judgment for that of the trial court. (*In re Christopher L., supra,* 143 Cal.App.4th at p. 1335.)

Finally, we reject father's assertion that the social worker made "false" statements to Tu.N. about adoption. To the contrary, the record demonstrates the social worker accurately described the differences between adoption and guardianship in an age-appropriate way, and that Tu.N. understood those differences and wanted to be adopted.

## III. DISPOSITION

The order terminating father's parental rights as to Tu.N. is affirmed.

5

_____

NEEDHAM, Acting P.J.

We concur.

_____

BURNS, J.

_____

RODRIGUEZ, J. *

*In re Tu.N.* / A161089

_____

    * Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.