Filed 9/13/21  In re T.M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re T.M., a Person Coming Under the Juvenile Court Law. | D078916 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. EJ3734A) |
| Plaintiff and Respondent, | |
| v. | |
| G.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Rohanee Zapanta, Judge.  Reversed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and J. Jeffrey Bitticks, Deputy County Counsel, for Plaintiff and Respondent.

G.M. (Mother) appeals an order terminating her parental rights and selecting a permanent plan of adoption for her daughter, T.M. Mother contends that the juvenile court erred in terminating her parental rights after finding that T.M. was likely to be adopted. Rather than filing a respondent's brief, the San Diego County Health and Human Services Agency (the Agency) filed a motion to augment the record with new evidence that T.M.'s prospective adoptive family is no longer interested in adoption and that T.M., who is now over the age of 12, no longer wants to be adopted. The Agency concedes that based on this new evidence, a permanent plan of adoption is no longer appropriate and that the juvenile court's order should be reversed. For reasons we shall explain, we conclude that this situation falls within a narrow exception to the general rule precluding an appellate court's consideration of new evidence not considered by the juvenile court. Under this exception, we may rely on this new evidence and the parties' agreement that the juvenile court's findings should be reversed. Accordingly, we will grant the motion to augment, reverse the juvenile court's order, and remand for a new selection and implementation hearing.

FACTUAL AND PROCEDURAL BACKGROUND

In 2013, the Agency petitioned the juvenile court pursuant to Welfare and Institutions code section 300, subdivision (b),[1] on behalf of then four-year-old T.M. The Agency alleged that Mother was unable to provide a suitable home for T.M. because of Mother's failure to take the necessary medication to treat her mental illness and also because of an instance when Mother physically abused T.M. Over the next several years, the Agency provided reunification services and T.M. was placed with a series of different

---

[1] Further statutory references are to the Welfare and Institutions Code.

2

caregivers, including with her Mother and Father, J.M.[2]  In May 2016, after efforts to reunite T.M. with her parents were unsuccessful, the juvenile court terminated reunification services for Mother and set the matter for a selection and implementation hearing.  (§ 366.26.)  The section 366.26 hearing was originally scheduled for August 2016.

The Agency struggled to find an adoptive placement for T.M.  In April 2017, after several unsuccessful prospective adoptive placements, the juvenile court concluded that T.M. was not adoptable, placed T.M. in a foster home, and selected a permanent plan of placement "with a fit and willing relative, return home to parent, adoption or legal guardianship."

In September 2017, T.M. was placed in a new foster home.  For the next several years, T.M. remained in the same home, but the foster parents repeatedly informed the Agency that they were not interested in adoption. During this time period, T.M. also reacted negatively to the prospect of adoption.  T.M. had been diagnosed with epilepsy, which was being treated with medication, and was participating in individual therapy.  T.M. was struggling in school and had behavioral issues.

In November 2020, the foster parents changed their minds and informed the Agency that they were now willing to have T.M. placed permanently in their care.  However, they were still unsure whether they were willing to adopt and expressed interest in the option of legal guardianship.  They asked the Agency for more time to consider their options.

By March 2021, T.M., now 11 years old, told a social worker that she wanted to be adopted.  The caregivers had also decided that they wanted to

---

2      Father is not a party to this appeal.

adopt T.M. Based on this information, the Agency contended that T.M. was specifically adoptable and recommended that parental rights be terminated.

At a section 366.26 hearing in April 2021, the juvenile court found that T.M. was likely to be adopted and that no exception to the statutory preference for adoption existed.[3] Accordingly, the juvenile court terminated parental rights. Mother appealed.

DISCUSSION

Mother contends that the juvenile court erred in selecting adoption as the permanent plan for T.M. following the selection and implementation hearing held pursuant to section 366.26. She asserts that the juvenile court's finding is not supported by clear and convincing evidence, given the difficulties in placing T.M. in a successful permanent home.

In response, the Agency declined to file a respondent's brief and instead moved to augment the record on appeal to include new evidence that the Agency relies upon to agree with Mother that, because of a change in circumstances, T.M. is currently *not* adoptable. The new evidence reveals that after the filing of this appeal, T.M.'s caregivers decided that they no longer wanted to adopt T.M., but were willing to continue the foster placement. Additionally, T.M., who is now 12 years old, expressed that she does not want to be adopted and wishes to remain in her current placement. Based on this information, the Agency filed a section 388 petition to change the juvenile court's previous order to modify the permanent plan.[4] The

---

[3]    At the hearing, the juvenile court did not specify whether it was finding T.M. to be specifically or generally adoptable. The record does not suggest that the Agency believed T.M. to be generally adoptable.

[4]    As of the filing of this opinion, that petition remains pending in the juvenile court.

4

Agency asks this court to consider this new evidence and determine that the juvenile court's order must be reversed because T.M. is no longer adoptable.

"When reviewing a court's finding a minor is adoptable, we apply the substantial evidence test. [Citations.] If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we must uphold those findings. We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. [Citations.] Rather, our task is to determine whether there is substantial evidence from which a reasonable trier of fact could find, by clear and convincing evidence, that the minor is adoptable." (*In re R.C.* (2008) 169 Cal.App.4th 486, 491.)

Thus, our review of a finding of adoptability follows the general rules for appellate review and is typically limited to the evidence presented to the juvenile court and included in the record on appeal. This principle was discussed by our Supreme Court in *In re Zeth S.* (2003) 31 Cal.4th 396 (*Zeth S.*), in which the Court similarly reviewed an order terminating parental rights and the trial court's finding that the minor was likely to be adopted by his current caretaker. That finding was challenged on appeal based on new evidence not presented to the juvenile court. (*Id.* at pp. 402-404.) The Supreme Court held that, except in limited circumstances, "consideration of postjudgment evidence of changed circumstances in an appeal of an order terminating parental rights, and the liberal use of such evidence to reverse juvenile court judgments and remand cases for new hearings, would violate both the generally applicable rules of appellate procedure, and the express provisions of section 366.26 which strictly circumscribe the timing and scope of review of termination orders, for the very purpose of expediting the

5

proceedings and promoting the finality of the juvenile court's orders and judgment." (*Id.* at p. 413.)

The *Zeth S.* court explained that even when an appellate court considers such evidence with the best of intentions, this approach "effectively substitutes the reviewing court's own post hoc determination of whether termination of parental rights remains in the minor's best interests for the legislatively mandated determination that follows when the comprehensive juvenile dependency statutory scheme is dutifully adhered to in the trial court. The Legislature, however, has determined that what is in the child's best interests is best realized through implementation of the procedures, presumptions, and timelines written into the dependency statutes. The statutory scheme does not authorize a reviewing court to substitute its own judgment as to what is in the child's best interests for the trial court's determination in that regard, reached pursuant to the statutory scheme's comprehensive and controlling provisions. This is particularly true where the reviewing court reaches a contrary determination on the basis of postjudgment evidence outside the record on appeal, which evidence, in likelihood, would have been irrelevant and excludable had it been known and presented to the trial court in the first instance." (*Zeth S.*, *supra*, 31 Cal.4th at pp. 409-410, fn. omitted.)

However, the California Supreme Court in *Zeth S.* noted that existing case law recognizes an important exception to this general rule. (*Zeth S.*, *supra*, 31 Cal.4th at p. 413, fn. 11.) In *In re Elise K.* (1982) 33 Cal.3d 138 (*Elise K.*), the Supreme Court held that when the parties were in agreement that, due to changed circumstances and the minor's advanced age, the minor was no longer adoptable, it was appropriate to accept that agreement and

6

reverse the judgment. (*Id.* at p. 139.) In *Zeth S.*, the Court reaffirmed that its prior decision in *Elise K.* "serves as precedent for the proposition that where postjudgment evidence stands to completely undermine the legal underpinnings of the juvenile court's judgment under review, and all parties recognize as much and express a willingness to stipulate to reversal of the juvenile court's judgment, an appellate court acts within its discretion in accepting such a stipulation and reversing the judgment." (*Zeth S.*, at p. 413, fn. 11.)

More recently, the court in *In re B.D.* (2019) 35 Cal.App.5th 803 relied on this exception to the general rule discussed in *Zeth S.* to consider new evidence on appeal that completely undermined the juvenile court's finding that the minor was specifically adoptable. (*Id.* at p. 818.) The court further concluded that changes to the Welfare and Institutions Code made after the decision in *Zeth S.* did not alter or negate this exception. (*Id.* at pp. 816-817.)

Considering the specific circumstances of this case, we conclude that the situation presented here falls within the exception set forth in *Elise K.* and recognized by the Supreme Court in *Zeth S.* At the time of the section 366.26 hearing, the Agency and the juvenile court were focused solely on T.M.'s specific adoptability by her current caregivers and her willingness, as an 11-year-old minor, to be adopted. However, the new evidence submitted by the Agency reveals that (1) the caregivers are no longer willing to adopt and (2) T.M. is no longer willing to be adopted. Once T.M. reached the age of 12, her objection to adoption or the termination of parental rights is a relevant factor that may serve as a legal impediment to adoption. (*In re Christopher L.* (2006) 143 Cal.App.4th 1326, 1333-1334; *In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1650.) Similarly, given the focus at the prior

hearing on T.M.'s specific adoptability based on the current caregivers' willingness to adopt and other evidence suggesting that T.M. was not generally adoptable, the caregivers' unwillingness to adopt T.M. completely undermines the juvenile court's finding that T.M. was likely to be adopted.

Moreover, the juvenile court's ability to modify its prior order terminating parental rights is limited, raising the likelihood that T.M. could become a legal orphan absent a reversal by this court. (See, e.g., *In re Francisco W.* (2006) 139 Cal.App.4th 695, 710.) The Legislature has clearly and unequivocally established that an order terminating parental rights may not be collaterally attacked and that the juvenile court "shall have no power to set aside, change, or modify it" except in a limited exception that does not appear to be applicable here. (§ 366.26, subd. (i)(1)-(2).) "This statute forbids alteration or revocation of an order terminating parental rights except by means of a direct appeal from the order." (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1161.)

Accordingly, we grant the Agency's unopposed motion to augment the record on appeal with new evidence establishing that T.M. does not wish to be adopted and that the current caregivers are no longer willing to adopt T.M. This new evidence completely undermines the juvenile court's finding that T.M. is adoptable. For this reason, we agree with the parties that the order should be reversed. On remand, the juvenile court may conduct a new selection and implementation hearing, at which it may consider the evidence as it exists at the time of the hearing regarding the appropriate permanent plan for T.M.

## DISPOSITION

The order terminating parental rights is reversed and the matter is remanded for the juvenile court to conduct a new section 366.26 hearing. We accept the parties' stipulation to the immediate issuance of the remittitur. The clerk of the court is directed to issue the remittitur forthwith.

AARON, Acting P. J.

WE CONCUR:


GUERRERO, J.


DO, J.