Filed 8/27/15  In re A.P. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re A.P., A Person Coming Under the Juvenile Court Law. | 2d Juv. No. B260161 (Super. Ct. No. J1395901) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES,  Plaintiff and Respondent,  v.  AMANDA P.,  Defendant and Appellant. | |

Amanda P. (mother) appeals the juvenile court's orders denying her petition to reinstate family reunification services (Welf. & Inst. Code, § 388),[1] terminating parental rights to her son, A.P., and selecting adoption as the permanent plan.  (§ 366.26.) Mother contends (1) the court abused its discretion by denying her section 388 petition and (2) the beneficial parent-child relationship exception precludes the child's adoption. (§ 366.26, subd. (c)(1)(B)(i).)  We affirm.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

FACTS AND PROCEDURAL BACKGROUND

In April 2012, police discovered mother and A.P., who was then 16 months old, in a "makeshift" tarp-covered dwelling. Mother was under the influence of methamphetamine and in possession of drug paraphernalia. A.P. was sleeping in a stroller and wearing only a diaper. Police arrested mother, who had a criminal history of substance abuse and three prior referrals to Santa Barbara County Child Welfare Services (CWS) for drug use and general neglect. CWS filed a juvenile dependency petition to protect A.P. (§ 300, subds. (b), (g).) The juvenile court sustained the petition and ordered CWS to provide family reunification services.

Between April and December 2012, mother completed inpatient substance abuse treatment, established a permanent residence, quit smoking, completed a parenting class and made significant improvement in therapy. At the 12-month review hearing, the juvenile court found mother had made excellent progress and placed A.P. in her care with family maintenance services. She had tested negative for drug use and was participating in 12-step and "safe care" programs, renting a room from friends and seeing a psychiatrist to treat her bipolar disorder. In November 2013, the court returned A.P. to her custody and terminated dependency jurisdiction.

Five months later, CWS visited the family home after receiving three referrals alleging mother had relapsed into methamphetamine use. Mother was nervous, appeared to be under the influence and acknowledged her relapse. Mother said she was using methamphetamine with her boyfriend, who was present. CWS called the police, who arrested mother, and filed a new dependency petition on A.P.'s behalf. The juvenile court sustained the petition, bypassed family reunification services under section 361.5, subdivision (b)(13) and set a permanency hearing. A.P. was placed with foster parents who wish to adopt him.

In the meantime, Mother pled no contest to a misdemeanor "under the influence" charge. (Health & Saf. Code, § 11550, subd. (a).) The criminal court ordered her to undergo a six-month Proposition 36 (Prop. 36) outpatient substance abuse treatment program and to participate in Narcotics Anonymous (NA). Mother told her

2

boyfriend, whom she had met in a substance abuse treatment program, to leave her home. Mother was "very determined to, as she puts it[, to] 'get it' this time."

In September 2014, mother petitioned under section 388 for reinstatement of family reunification services. The juvenile court held combined, contested modification and permanency hearings the following month. Kathleen Tuttle, a drug treatment counselor, testified that mother's last positive drug test was upon intake into the Prop. 36 treatment program in May 2014. By August, mother had graduated from the program and was attending a 12-step program. Mother also continued in the Prop. 36 program because she wanted the additional support. Tuttle stated that mother "has taken this on as something that is a part of her, that recovery is a part of her."

Mother's therapist reported that mother was a consistent and willing participant in individual counseling sessions. Mother completed a 10-week parenting program and took responsibility for her own actions, promising to "make the right choices to use my skills I've learned since I began recovery," including attending to her own mental health and taking medications as prescribed. Mother also acknowledged it was not the "best decision" to live with a man who also was in recovery.

According to social workers, A.P. generally was "happy and comfortable" in mother's care, but she was not always adept at discipline or setting boundaries. A.P.'s therapist reported he "has symptoms of ruptured attachment, PTSD and trauma," and also suffers from anxiety and eating issues. In denying the section 388 petition, the court found that mother proved neither changed circumstances nor that reinstatement of services would be in A.P.'s best interests. It also found "[h]er actions have not been completely parental" and that her relationship with A.P. does not "outweigh[] the . . . long-term benefit to [A.P.] of permanency that would come with adoption." The court terminated parental rights and identified adoption as the permanent plan. Mother appeals.

DISCUSSION

*Section 388 Petition*

Mother contends the juvenile court abused its discretion by denying her petition for reunification services. The grant or denial of a section 388 petition is

3

committed to the sound discretion of the trial court and will not be disturbed unless abuse of discretion is clearly established. (*In re Shirley K.* ( 2006) 140 Cal.App.4th 65, 71.) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' . . . . [Citation.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*).) To prevail on a section 388 petition, the parent must establish that new or changed circumstances exist and that the proposed order would promote the best interests of the child. (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 641-642; *In re S. J.* (2008) 167 Cal.App.4th 953, 959.)

After reunification services were denied in May 2014, mother completed the Prop. 36 drug treatment program, regularly attended NA meetings and re-engaged in mental health and parenting services. The juvenile court complimented mother on her six months of sobriety, but noted she had twice that when A.P. was returned the first time. In the court's view, "with a long-time use, it's got to be a longer time to demonstrate there's a thorough and full commitment to sober lifestyle. Not that I discount the counsel[or's] belief that there is a renewal on her part or -- I'd consider that, but I don't think it's enough."

A reasonable inference from the evidence is that circumstances had not changed. Mother has a history of drug relapses, is in the early stages of recovery and is still addressing her substance abuse problem. (See *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 (*Kimberly F.*) ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 ["relapses are all too common for a recovering drug user"].) While mother offered proof that she again was starting to rehabilitate, "'[c]hildhood does not wait for the parent to become adequate.' [ Citation.]" (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.)

Furthermore, mother failed to show that allowing reunification services would be in A.P.'s best interests. Three factors guide the juvenile court's discretion in considering a section 388 petition: (1) the seriousness of the problem that led to the

4

dependency; (2) the relative strength of the relationships between the child and the parent and the child and the caretaker; and (3) the degree to which the underlying problem has been ameliorated. [2] (*Kimberly F., supra*, 56 Cal.App.4th at pp. 531-532.)

Here, the underlying problem is mother's drug addiction. As a result of that addiction, A.P. has spent more than a third of his life with his foster parents. They cared for him during his first dependency, regularly visited him while he was placed with mother and now meet his every basic and special need, providing him with the only stability he has ever known. The foster parents consider A.P. family and are committed to adopting him. At one point, A.P. became upset when one of his foster siblings implied that their home was not his own. While mother's supervised visits with A.P. generally were positive, she failed to consistently set boundaries and discipline him during visits. A.P. also experienced high anxiety after the visits, acting wildly and once ripping apart his t-shirt with his teeth.

Mother failed to show that she could alleviate her long-standing substance abuse problem such that she could be a stable parent to A.P. in the long-term. Nor did she show that reunification services would not undermine A.P.'s bond with his foster parents and his stability. (See *In re D.R.* (2011) 193 Cal.App.4th 1494, 1512 ["the disruption of an existing psychological bond between dependent children and their *caretakers* is an extremely important factor bearing on any section 388 motion"].) After being removed twice from mother's custody, A.P. displayed symptoms of ruptured attachment disorder and post traumatic stress disorder. He showed no appropriate fear around strangers and even "wrap[ped] himself around" them. He suffered from eating issues, impulsivity and had become increasingly aggressive in play. One social worker opined, "[A.P.] cannot endure another removal without further damage to his ability to

___

[2] As CWS points out, some courts have declined to apply the *Kimberly F.* factors on the basis that they do not sufficiently take into account the Supreme Court's statement in *Stephanie M., supra*, 7 Cal.4th at page 317, that after termination of reunification services the focus must be on the child's need for permanency and stability. (E.g., *In re J.C.* (2014) 226 Cal.App.4th 503, 527.) We need not address the extent to which the *Kimberly F.* factors are appropriate in light of *Stephanie M.*, as we conclude that even applying those factors, the juvenile court did not abuse its discretion in denying the section 388 petition.

bond, and further damage to his mental health."  Under these circumstances, "the [child's] interest in stability was the court's foremost concern, outweighing any interest mother may have in reunification."  (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 251-252.)  The court did not abuse its discretion by denying the section 388 petition.

*Beneficial Parent-Child Relationship Exception to Adoption*

Mother contends the juvenile court erred in terminating parental rights and choosing adoption as the permanent plan because A.P. will benefit from continuing the parent-child relationship.  (§ 366.26, subd. (c)(1)(B)(i).)  A parent seeking to overcome the statutory preference for adoption "must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed.  [Citations.]  A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent.  [Citation.]"  (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.)

As mother concedes, our standard of review is the substantial evidence test.  (*In re Christopher L.* (2006) 143 Cal.App.4th 1326, 1333; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.)  We determine if there is substantial evidence, contradicted or uncontradicted, to support the conclusions of the juvenile court, resolving all conflicts favorably to the prevailing party, and drawing all legitimate inferences to uphold the lower court's ruling.  (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1378-1379.)

CWS did not dispute that mother maintained regular contact with A.P.  To establish a beneficial parent-child relationship, however, mother also needed to show that A.P would benefit from continuing that relationship.  Mother's visitation with A.P. showed they had pleasant visits and affectionate contact.  But even frequent and loving contact between parent and child is not sufficient to establish the requisite benefit to the child if the mother does not occupy a parental role and is unable to take custody.  (*In re Teneka W.* (1995) 37 Cal.App.4th 721, 728.)  A "pleasant" relationship is not enough to establish a benefit to the child because "it bears no resemblance to the sort of consistent,

6

daily nurturing that marks a parental relationship." (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827; see *In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 324; *In re Autumn H., supra*, 27 Cal.App.4th at p. 575.)

A.P. was three years old at the time of the permanency hearing and had spent over a third of his life outside of mother's custody. At times, he acted indifferently towards mother on the telephone, choosing to speak with her for only a few minutes. At other times, he refused to speak with her at all. A.P. experienced high anxiety, acted wildly and struggled with rules and boundaries after in-person visits with her. He sometimes called mother by her first name. A.P. also struggled with eating issues, obsessing about food and eating until he gagged. He stated, "I was hungry at Amanda's house and I'm not hungry [in the foster parents' house]." His therapist reported that he was anxious about his long-term placement and needed a safe and stable environment. In sum, substantial evidence supports the trial court's finding that allowing adoption would not deprive A.P. of "a *substantial*, positive emotional attachment such that [he] would be *greatly* harmed. [Citations.]" (*In re Angel B., supra,* 97 Cal.App.4th at p. 466.)

"Interaction between natural parent and child will always confer some incidental benefit to the child." (*In re Autumn H., supra*, 27 Cal.App.4th at p. 575.) Mother was unable to show, however, that she can safely parent A.P., having previously exposed him to substance abuse and neglect. Simply put, the relationship between mother and A.P. did not "outweigh the well-being [A.P.] would gain in a permanent home with new, adoptive parents." (*Ibid.*) "The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038, superseded by statute on another ground as stated in *In re Eli F.* (1989) 212 Cal.App.3d 228, 234.)

DISPOSITION

The orders denying mother's section 388 petition, terminating her parental

7

rights and selecting adoption as the permanent plan are affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Christopher R. Booth, under appointment by the Court of Appeal, for Appellant.

Michael C. Ghizzoni, County Counsel, Bo L. Bae, Deputy County Counsel, for Respondent.