Filed 8/4/21  In re A.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.B., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E076183 |
| Plaintiff and Respondent, | (Super.Ct.No. J284537) |
| v. | OPINION |
| S.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Valerie Ross for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Pamela J. Walls, Special Counsel, for Plaintiff and Respondent.

1

S.C. (mother) appeals from juvenile court orders asserting jurisdiction over her son, A.B., and removing him from her custody. Mother contends there was insufficient evidence to support the jurisdictional and dispositional orders. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2020, the San Bernardino County Children and Family Services (CFS) filed a Welfare and Institutions Code[1] section 300 petition on behalf of A.B., alleging that he came within subdivisions (b) (failure to protect) and (g) (no provision for support). He was three years old at the time. The petition alleged that mother physically abused M.H. (the daughter of mother's boyfriend), and such actions placed A.B. at substantial risk of abuse/neglect by mother. The other allegations under section 300, subdivisions (b) and (g), concerned A.B.'s father (father), who is not a party to this appeal.

The court held a hearing on March 13, 2020, and detained A.B. in foster care.

*Jurisdiction/disposition*

The social worker filed a jurisdiction/disposition report on June 13, 2020, recommending that the court sustain the petition, declare A.B. a dependent, and order mother to participate in reunification services. The social worker reported that on February 28, 2020, CFS received a referral alleging that mother physically abused M.H., who was seven years old at the time. M.H. resided with her father (mother's boyfriend),

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

mother (whom she referred to as her stepmother), and mother's son, A.B., who is the subject of this appeal. M.H. told the reporting party that mother hit her because she got in trouble. The reporting party asked if this situation had happened before, and M.H. said it happened all the time.

A social worker interviewed M.H. at her school and observed that she had a purple-green bruise on the right side of her temple, a purple and red mark from the base of her eyebrow to the tip of her nose, a red scratch mark near her mouth, and a red mark on her earlobe. Also, her whole cheek was slightly red. The social worker asked her how she got the bruising, and she said, "I forgot." However, she then reported that mother yelled at her, pulled her hair, and "smacked her." She said A.B. was sitting next to her on the bed when mother hit her. She said she had been hurt prior to this, "but this was the worse one." M.H. said that she does not listen and when she gets in trouble, she is smacked. The social worker noted that M.H. was inconsistent with her story, however, since she also indicated this was an isolated incident.

M.H.'s father picked her up from school and took her to the doctor. M.H. told her father that she was smacked by mother, which caused the bruising on her temple. However, when she was seen by the doctor, M.H. changed her story and said she fell and hit her head on the ground.

At a subsequent interview with a social worker on March 4, 2020, M.H. indicated that she went to the doctor, but she forgot what she said to the doctor. M.H. then stated, "it was an accident," and said she was sitting on her knees, leaned to the side, and hit her head on the floor. She denied being hit by mother.

3

Mother was interviewed and reported that she lived with her boyfriend and his daughter, M.H. She denied using physical discipline with M.H. or A.B. She stated that M.H. told the doctor she leaned off her bed and hit herself on the face. The social worker observed that M.H.'s bed was low to the ground. The case was reassigned to another social worker, who interviewed mother on March 17, 2020. Mother denied causing M.H.'s injuries and said she was not even aware M.H. had an injury when she went to school that day. She believed M.H. might have made up the allegations due to being upset that her own mother was not very involved in her life.

On March 25, 2020, the social worker interviewed father. She informed him that CFS had removed A.B. from mother due to safety concerns. Father said he was not sure he wanted to be involved, stating that he had previously told mother he was signing over his rights to A.B. He said he and mother were together for three years and their relationship was violent. He said they would throw things at each other, and they would scream and yell at each other in the presence of his daughter from another relationship.

On March 30, 2020, another social worker interviewed M.H., and she repeated that she injured her face when she was sitting on her knees, tilted over, and hit her head on the floor. However, M.H. also said again that when she gets in trouble, she "get[s] spanked or hit by [mother]."

The court held a jurisdiction/disposition hearing on June 19, 2020. The matter was set contested by father and was continued to July 22, 2020.

4

On July 21, 2020, the social worker filed an amended section 300 petition, which added allegations concerning father under subdivision (b), and eliminated the allegations under subdivision (g).

On July 22, 2020, M.H. was interviewed at the Children's Assessment Center (CAC) and had a medical evaluation.[2] She initially said she lied when she said mother hit her. She said she got the bruise when she was kneeling down watching television, scooted forward to see the television better, and fell and banged her head against the floor. She said she did not feel anything and did not know she had a bruise until she went to school and her teacher noticed it. M.H. said she had to go to the school office, and she told the school staff that mother lifted her up and then put her on the ground, but said "she didn't smack me." M.H. said her father picked her up from school and took her to the doctor. She said she told her father that mother hit her, so he called mother, and mother denied it. M.H. heard them arguing about it. She then told the doctor that mother hit her and picked her up by her hair and threw her to the ground. However, M.H. told the CAC interviewer that mother did not really do that, but she told the doctor she did because, "I kind of saw it in . . . my mind, so . . . I said it." The interviewer asked M.H. if there was anyone who made her scared, and she said sometimes she thinks mother will smack her when she is doing her hair; however, she indicated that mother does not smack her. M.H. said she was currently living with her grandmother, until she can go back to her dad.

---

[2] The CAC interview and examination were delayed due to Covid. The interview was recorded, and the court viewed a copy of the DVD.

On August 26, 2020, the social worker filed a memorandum with additional information for the court and attached a report from CAC with a synopsis of the interview with M.H., as well as the medical evaluation report. After reviewing photographs of M.H.'s injuries, the medical examiner stated that her injuries were not consistent with a fall from her knees, but were consistent with her initial disclosure of being struck in the face, and the bruises were indicative of physical abuse.

The court held a contested jurisdiction/disposition hearing, beginning on October 19, 2020. Mother testified that M.H. was her ex-boyfriend's daughter, and she was injured when they were moving into their new house. Mother said they were so busy moving she did not even know M.H. was injured until CFS came to their house. Mother observed the bruise when M.H.'s father brought her home that day. She denied ever pulling M.H. up by her hair or knocking her to the ground and said she believed M.H. fell in her room.

M.H.'s father also testified. He said that when he picked M.H. up from school, he observed the bruise on her right temple, and she told him mother hit her. He kept asking her what happened, and she then changed her story and said she got the bruise at school or on the bus; she also said she fell off the bed. He believed the story that she fell off the bed.

One of the social workers who worked on the case testified, as well. She said forensic specialists determined that, based on the severity of the injuries to M.H.'s face and her initial story, this was a case of physical abuse.

Another social worker testified that M.H. told three people mother hit her—an adult at school, the social worker who went to the school to investigate, and her father. She further testified that M.H. made her initial disclosure at school and that children commonly feel safer around their teachers. She also testified that when you ask a child the same questions multiple times, you are likely to get different answers. Moreover, she confirmed that the medical evidence in this case supported the finding that M.H. was physically abused.

After reviewing all the evidence, the court noted that M.H. first said mother hit her because she got in trouble, and it found this disclosure to be the most credible. It noted that when her father picked her up at school, she told her father that mother hit her. Then, she told the doctor that mother hit her. The court pointed out that M.H. also told the social worker that mother yelled at her and smacked her. It observed that when she told her father, he was clearly upset, and she understood at that point that what she was doing was going to cause trouble. The court noted that M.H. indicated in her CAC interview that she missed her father and wanted to return to him, and she knew that what she initially disclosed was going to result in separating her from him, so her story changed. The court further observed that when the child said she scooted on her knees to see the television, she said she banged her head but did not really feel anything. However, it opined that, given the color of her bruises, she would have felt something.

The court reiterated that M.H. told three people on February 28, 2020, that mother hit her—the person at school, her father, and the social worker. Thus, having listened to the witnesses and weighing their credibility, it believed that disclosure was the most

7

credible.  The court further noted the CAC report, which included the medical evaluation, concluded that the bruises were indicative of physical abuse.  Therefore, the court found that A.B. came within section 300, subdivision (b), declared him a dependent, removed him from mother's custody, and ordered mother to participate in reunification services.[3]

DISCUSSION

I.  The Court Properly Took Jurisdiction of A.B.

Mother argues there was insufficient evidence to support the juvenile court's jurisdictional finding under section 300, subdivision (b), that A.B. was at substantial risk of abuse due to the physical abuse of M.H.  She contends that this case was based on the statements of M.H.; however, M.H. made different statements as to how she received her injuries, and it was "mere speculation" as to which version was true.  We conclude the evidence was sufficient to support the court's jurisdictional finding.

A. *The Evidence Was Sufficient*

Section 300, subdivision (b), provides that the juvenile court may adjudge a child a dependent of the juvenile court when the child has suffered, or there is a substantial risk that the child will suffer, serious harm or illness, "as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . ."  "The standard of proof required in a section 300 dependency hearing is the preponderance of evidence.  [Citation.]"  (*In re Basilio T.* (1992) 4 Cal.App.4th 155, 168.)

---

[3] The court also sustained a petition regarding M.H. and declared her a dependent in a separate case.

8

"The issue of sufficiency of the evidence in dependency cases is governed by the same rules that apply to all appeals. If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we uphold those findings. [Citation.] We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or evaluate the weight of the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record most favorably to the juvenile court's order, and affirm the order even if other evidence supports a contrary conclusion. [Citations.] The appellant has the burden of showing the finding or order is not supported by substantial evidence. [Citation.]" (*In re Christopher L.* (2006) 143 Cal.App.4th 1326, 1333-1334.)

Here, the court found that M.H. was physically abused by mother. The evidence showed that M.H. had a purple-green bruise on the right side of her temple, a purple and red mark from the base of her eyebrow to the tip of her nose, a red scratch mark near her mouth, and a red mark on her earlobe. The medical evaluation indicated that these injuries were consistent with physical abuse. The court noted that on the day the referral was received, M.H. told three different people that mother hit her. The evidence showed that M.H. told the reporting party that mother hit her because she got in trouble. Then, when the social worker interviewed her at school, M.H. said mother yelled at her and smacked her, and that when she does not listen and gets in trouble, she gets smacked. The evidence also showed that when her father picked her up from school to take her to the doctor, she told her father the same thing.

Mother points out that M.H. subsequently changed her story and said she was kneeling down and scooted forward, then fell and hit her face on the ground. She also

9

told her father that she got the bruise on the school bus and at school. However, the court expressly found that M.H.'s initial disclosure that mother hit her was the most credible version of events. On appeal, "[w]e do not reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts." (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 135.)

We further note the evidence showed that A.B. was sitting next to M.H. when mother hit her, on at least one occasion; thus, he could have also been struck by one of her blows. In addition, mother completely denied using physical discipline with M.H. or causing her injuries. Thus, she presumably saw no need to address any issues of physical abuse.

In view of the evidence that mother physically abused M.H. and refused to acknowledge or address her problem with violence and aggression, and given that A.B. was in a position of danger from this violence on at least one occasion, there was sufficient evidence to show A.B. was at substantial risk of similar harm if left in mother's care. We thus conclude the evidence was sufficient to support the court's finding, and the court properly took jurisdiction of A.B.

## II. The Court's Disposition Order Was Proper

Mother simply claims that since there was no evidence to support the court's jurisdiction over A.B., the court's dispositional order should accordingly be reversed. In light of our conclusion that there was sufficient evidence to support the court's jurisdiction, we reject mother's claim.

10

We note that "[t]he court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the court's determination in this regard absent a clear abuse of discretion. [Citations.]" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) The court here ordered that A.B. be removed from mother's custody. The evidence was sufficient to support a finding that there was a substantial danger to the health, safety, and protection of A.B. if he was returned to her custody. (See § I, *supra*; see also § 361, subd. (c)(1).) Therefore, we see no abuse of discretion.

<u>DISPOSITION</u>

The orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

I concur:

MILLER _____
Acting P. J.

11

[*In re A.B.*, E076183]

Slough, J., Concurring.

I agree with the outcome of the majority opinion but write separately because I respectfully disagree with my colleagues' reason for affirming the disposition order. The majority conclude removal was proper "in light of [their] conclusion that there was sufficient evidence to support the court's jurisdiction." (Maj. opn. *ante*, at p. 10.) I believe that kind of analysis misapplies the law.

Jurisdiction and removal are two distinct concepts subject to different burdens of proof. Unlike jurisdiction, which requires proof by a preponderance of the evidence that the child is at a substantial risk of harm at the time of the hearing, removal requires proof by clear and convincing evidence that "a *return home* would pose a substantial danger to [the child's] physical health and . . . *there are no reasonable alternatives* to removal." (*In re E.E.* (2020) 49 Cal.App.5th 195, 205, italics added; see also *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.) "'The elevated burden of proof for removal from the home . . . reflects the Legislature's recognition of the rights of parents to the care, custody and management of their children, and further reflects an effort to keep children in their homes where it is safe to do so. [Citations.] By requiring clear and convincing evidence of the risk of substantial harm to the child if returned home and the lack of reasonable means short of removal to protect the child's safety, section 361, subdivision (c) demonstrates the "bias of the controlling statute is on family preservation, not removal."'" (*In re A.R.* (2015) 235 Cal.App.4th 1102, 1115.) As this court observed in *In re E.E,* relying solely on the evidence supporting the jurisdictional finding to uphold a

1

removal order ignores this elevated burden of proof and the different purposes sections 300 and 361 serve. (See *In re E.E.*, *supra*, 49 Cal.App.5th at p. 218 [jurisdictional findings are not prima facie evidence to support removal unless the court has adjudicated the child a dependent under § 300, subd. (e) (severe physical abuse)].)

In this (and every) dependency case, the reasons for upholding the removal order are different from the reasons for affirming jurisdiction. The court's decision to *take jurisdiction* over A.B., even though he was not the child whom mother abused, is proper because the record reveals an articulable risk of harm to A.B. (See *In re Janet T.* (2001) 93 Cal.App.4th 377, 388 ["before courts may exercise jurisdiction under section 300, subdivision (b) there must be evidence 'indicating *the child* is exposed to a substantial risk of serious physical harm or illness'"], italics added.) Though mother's physical abuse was directed at her boyfriend's daughter, on at least one occasion, she beat the girl in such close proximity to A.B. that he could easily become the target of her violence, intentionally or not. (See, e.g. *In re Heather A.* (1996) 52 Cal.App.4th 183, 194 [engaging in domestic violence while children are home "[o]bviously" places them "in a position of physical danger from this violence, since, for example, they could wander into the room where it was occurring and be accidentally hit"].)

But the court's decision to *remove* A.B. from mother's care is a different decision with a different calculus. As such, the evidence that makes removal necessary is not that mother abused her boyfriend's daughter in front of A.B. (that is what supports jurisdiction), but that she denies this fact and hasn't taken any steps to address or treat her problems with violence and aggression. A parent may suffer from issues that warrant

asserting jurisdiction over their child, but they can also proactively address them to the point the court feels safe allowing the child to return to their care (which is why the basis for removal can never be the same as the basis for jurisdiction). But that is not what happened here. Mother was not proactive (or honest about her issues).

The juvenile court found M.H., the victim of mother's abuse, more credible than mother and concluded M.H.'s injuries were the result of a pattern of violence and physical abuse, not of an isolated incident. It is this finding, *coupled with* mother's refusal to acknowledge or address her anger and abuse issues, that reasonably supports a conclusion that if A.B. were returned to her care he would be in danger of triggering that violent pattern himself. Where there is a risk an abusive parent will target a previously unharmed child, "'[t]he court need not wait until [they are] seriously abused or injured to assume jurisdiction and *take the steps necessary to protect the child*.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773, italics added.)

I think the majority is mistaken to uphold the removal order based only on the evidence supporting jurisdiction—that is, mother's abuse of her boyfriend's daughter. However, because I believe the record allows us to articulate a reason why A.B. cannot safely be returned to mother's care after the discovery of that abuse, I concur in the judgment.

SLOUGH         

J.

3